**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

CAROL J. GRIFFITHS,

        Plaintiff,

vs.

WINNEBAGO INDUSTRIES, INC.,

        Defendant.

No. C03-3019-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.*  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*  *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A.*  *Standards for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . 4
    *B.*  *Equal Pay Act Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *1.*  *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *2.*  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *3.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            *a.*  *Griffiths's prima facie case* . . . . . . . . . . . . . . . . . 11
            *b.*  *Statutory affirmative defenses* . . . . . . . . . . . . . . . 18
                *i.*  *Seniority system* . . . . . . . . . . . . . . . . . . . . 19
                *ii.*  *Factors other than sex* . . . . . . . . . . . . . . . . 20

*III.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. INTRODUCTION

## A. Factual Background

Defendant Winnebago Industries, Inc. ("Winnebago") is an Iowa company that manufactures motor homes in Forest City, Iowa. Plaintiff Carol J. Griffiths ("Griffiths") began working as a member of Winnebago's production department on September 29, 1971. Griffiths held several positions throughout her employment at Winnebago, and ultimately rose to the position of Production Supervisor in the Large Cabinet Department, in 1985. Appendix to Defendant's Motion for Summary Judgment ("Deft.'s App."), Doc. No. 11, at 19. In 1990, due to a slow-down in business, Griffiths was demoted to a lead production supervisor. During her period of "demotion" Griffiths's pay rate remained static—it was neither increased or decreased. Griffiths was reinstated as a Production Supervisor II ("Supervisor II") of the Large Cabinet Department on January 18, 1993, and continued in that position until her retirement on March 1, 2002. As a Supervisor II, Griffiths was generally responsible for supervising and setting schedules for assigned hourly employees, providing necessary training to supervised employees, hiring new employees, planning and assigning work, dealing with personnel problems of supervised employees as they arose, evaluating assigned employees and conducting reviews. Deft.'s App., at 31-32. In 2001-2002, the salary range for Griffiths's position was $631 to $947 per week, with a midpoint of $789 per week. At the time of her retirement, Griffiths's salary was $812 per week—above the midpoint of the salary range for her position. During her tenure at Winnebago, Griffiths had supervised between 20 and 35 employees in her capacity as a Supervisor II, and was supervising 21 persons at the time of her retirement on March 1, 2002. During Griffiths's employment, the record indicates that Winnebago employed nine male employees in other departments with the same title (Supervisor II), Labor Grade (65), Job Code ("RN") and salary range ($631 - $947 per

week; $789 midpoint) as Griffiths—and only two of those individuals made less per week than the plaintiff.

On April 3, 2002, Griffiths filed a complaint with the Iowa Civil Rights Commission ("ICRC"), in which she indicated that she had been discriminated against by her employer based on her sex, age, and physical disability. Deft.'s App. at 5. The complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On December 5, 2002, the EEOC adopted the findings of the ICRC, and issued a Dismissal and Notice of Rights which indicated that her complaint was dismissed and set forth the time frame in which she had to file federal charges. *Id.* at 8. Griffiths received her right-to-sue letter from the ICRC on February 25, 2003. *Id.* at 9.

## B.  Procedural Background

On March 3, 2003, Griffiths filed a Compliant and Jury Demand alleging two causes of action: (1) a claim of receiving unequal pay due to her sex in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and (2) a claim of sexual discrimination in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. *et seq.* (Doc. No. 1). On August 28, 2003, Winnebago filed an Answer and Affirmative defenses, which denied the substance of Griffiths's claims and asserted several affirmative defenses. (Doc. No. 5). On March 1, 2005, Winnebago filed a Motion for Summary Judgment, contending that, following discovery, it was evident that both of Griffiths's claims were without any factual support. (Doc. No. 11). On April 8, 2005, Griffiths filed a resistance in which she resisted Winnebago's motion for summary judgment as to her EPA claim, but

withdrew her Title VII sex discrimination claim.[1] (Doc. No.14). On April 20, 2005, Winnebago filed its reply. (Doc. No. 15). Winnebago did initially request oral arguments on its motion for summary judgment. Although it has been the court's strong preference over the years to grant oral arguments whenever requested, the court has not found oral arguments necessary to the resolution of the defendant's motion for summary judgment. Moreover, the court's busy schedule—including post-trial motions in one federal death-penalty case and pre-trial motions, jury selection, and the start of trial in another—has not permitted the timely scheduling of oral arguments sufficiently in advance of trial in this matter to permit timely resolution of the motion for summary judgment. Therefore, the court will resolve the defendant's motion for summary judgment on the parties' written submissions. A jury trial in this matter is currently set for July 11, 2005. The matter is now fully submitted and ready for a determination by this court.

## II.  LEGAL ANALYSIS

### A.  Standards for Summary Judgment

The parties here agree generally on the standards applicable to a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that a defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims against that party. FED. R. CIV. P. 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[1] Griffiths did not lodge a Title VII wage-discrimination claim in this case, though such a claim under Title VII does exist and must be construed harmoniously with a claim under the EPA for unequal pay based on sex. *See Orahood v. Board of Trustees of the Univ. of Arkansas*, 645 F.2d 651, 654 & n.3 (8th Cir. 1981).

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Quick*, 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at

394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment discrimination cases. *See, e.g., Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991)).

The court will apply these standards to the motion for summary judgment by the defendant on Griffiths's claims.

### B. Equal Pay Act Claim

#### 1. Applicable law

The Eighth Circuit Court of Appeals in *Younts v. Fremont County, Iowa*, 370 F.3d 748 (8th Cir. 2004), recently summarized the analysis of a claim of unequal pay based on sex pursuant to the Equal Pay Act as follows:

> The EPA prohibits an employer from paying employees of one sex less than employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The plaintiffs have the burden to prove their employer paid them less than male employees for substantially equal work. *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 491 (8th Cir. 2003). Whether employees perform substantially equal work "requires a practical judgment on the basis of all the facts and circumstances of a particular case, including factors such as level of experience, training, education, ability, effort, and responsibility." *Id.* at 492 (citation omitted). This analysis does not depend "on job titles or classifications[,] but on the actual requirements and performance of the job." *Id.* (citation omitted). We are required to "compare the jobs in question in light of the full factual situation and the [EPA's] broad remedial purpose." *Id.* (citation omitted). When evaluating the amount of effort required to perform a job, we consider "the physical or mental exertion necessary to the performance of a job," and when evaluating the amount of responsibility a job entails, we consider "the degree of accountability required in performing a job." *Berg v. Norand Corp.*, 169 F.3d 1140, 1146 (8th Cir. 1999) (citation omitted). We are not particularly interested in a plaintiff's conclusory allegations about which jobs are equal. *See id.* (Holding conclusory affidavit testimony that two jobs are equal does not establish a *prima facie* case under the EPA). Instead, we review the actual requirements and performance of the jobs in question.

*Id.* at 752-53; *see Broadus v. O.K. Indust. Inc.*, 226 F.3d 937, 941 (8th Cir. 2000) ("To establish a violation of the Equal Pay Act, an employee must demonstrate that the employer paid male and female employees different wages for substantially equal work."); *Horner v. Mary Institute*, 613 F.2d 706, 713 (8th Cir. 1980) ("For purposes of the Act, "equal" means "substantially equal"; male and female jobs may be compared even if they are not identical."). If a plaintiff [establishes a *prima facie* case], the burden shifts to the defendant to prove one of the affirmative defenses set forth under the EPA." *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003); *see Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 683 (8th Cir. 2001) ("Once the plaintiff has proven her *prima facie* case, the employer then bears the burden of coming forward with a legitimate nondiscriminatory factor upon which it based the wages paid.") (citing 29 U.S.C. § 206(d)(1) (1994) and *Hutchins v. Intn'l Brotherhood of Teamsters*, 177 F.3d 1076, 1080-81 (8th Cir. 1999)); *Inglis v. Buena Vista Univ.*, 235 F. Supp. 2d 1009, 1019 (N.D. Iowa 2002) ("Once the plaintiff has proven her *prima facie* case, the employer then bears the burden of coming forward with a legitimate nondiscriminatory factor upon which it based the wages paid."). The EPA provides the following affirmative defenses an employer can rely on as justifying a discrepancy in wages between male and female employees: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a difference based on any other factor other than sex . . . ." 29 U.S.C. § 206(d)(1). "This analytical framework differs from the *McDonnell Douglas* burden shifting analysis [in that] [u]nder the EPA, a defendant cannot escape liability by articulating a legitimate, non-discriminatory reason for the employment action. Rather, the defendant must prove that the pay differential was based on a factor other than sex." *Taylor*, 321 F.3d at 716 (citation and footnote omitted); *Fagan v. Iowa*, 301 F. Supp. 2d

997, 1002-03 (S.D. Iowa 2004) (holding that it is not appropriate to analyze the plaintiff's EPA claim under the *McDonnell Douglas* burden shifting analysis, and noting that the critical difference between "the [EPA] framework and the *McDonnell Douglas* burden-shifting paradigm is which party has the ultimate burden of proof on the issue of discrimination.").

### 2.    *Arguments of the parties*

Essentially, Winnebago argues that Griffiths is unable to sustain her burden in demonstrating a *prima facie* case of unequal pay based on sex under the EPA. Winnebago asserts that Griffiths has identified *only* Ed Madson Sr. as a male counterpart that was paid more than she was—and that this singular allegation is insufficient, under the law, to sustain her burden on summary judgment. Winnebago argues that the record establishes that a number of male production supervisors were paid less than Griffiths, and at least two production supervisors and one warehouse supervisor were paid more than Griffiths. Winnebago further points out that at the time of her retirement, Griffiths was paid above the midpoint salary for her position. Winnebago claims that this case is directly on point with *Sowell v. Alumnia Ceramics, Inc.*, 251 F.3d 678 (8th Cir. 2001), in which the Eighth Circuit affirmed the district court's grant of summary judgment as to the plaintiff's EPA claims where the record demonstrated that the lone female tool maker made less than some male counterparts, but more than other male counterparts, and where the plaintiff had put forth nothing but conclusory allegations. Defendant's Brief in Support of Motion for Summary Judgment ("Deft.'s Brief"), Doc. No. 11, at 7 (citing *Sowell*, 251 F.3d at 683-84). In summary, Winnebago asserts that Griffiths cannot generate a genuine issue of material fact with respect to her EPA claim and therefore summary judgment as to the EPA claim should be granted in Winnebago's favor.

In resistance, Griffiths proffers that the following similarly situated male employees

were making substantially more than she was at the time of her retirement in March 2002: Steve Albright ("Albright"); Thomas Langerud ("Langerud"); Arnold Gray ("Gray"); Darl Abbas ("Abbas"); Bruce Bruckhoff ("Bruckhoff"); Bruce Jensen ("Jensen"); Brad Wicker ("Wicker"); Edward Madson, Sr. ("Madson"); and Mike Plath ("Plath"). Griffiths contends that looking at this group of male employees, those with similar hire dates and supervisory experience as herself were making between $850-$901 per week in 2001, and that those with less than ten years of supervisory experience were making between $826-$842 per week in 2001—therefore, Griffiths's weekly wage of $812 per week in 2001, in light of her extensive experience and work history with Winnebago, was unequal to male comparators. In fact, Griffiths points out that in 2001 only *two* male Supervisor IIs were paid less per week than she was—Duane Massman ("Massman") and Jerry Pennings ("Pennings"). Griffiths also indicates that Albright, Gray, Langerud, and Bruckhoff—all of whom were paid more than Griffiths—did not know of any reason why they would be paid more than any other Supervisor II at Winnebago, though Bruckhoff speculated that if he were paid more, that it was likely due to his twenty three years of experience and extensive track record. Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment ("Plf.'s Resistance"), Doc. No. 14, at 7. Griffiths also asserts that all of the previously identified male employees that carry the Supervisor II title had substantially equal job duties and requirements—the only difference being the nature of the specific component part made by the department they supervise. Griffiths contends her argument is supported by the nearly identical job descriptions for the Supervisor IIs of each department. For these reasons, Griffiths contends that she has met her burden on summary judgment of creating a genuine issue of material fact as to the elements of her *prima facie* case—and further, as Winnebago cannot establish any applicable justification as a matter of law, the defendant's motion for summary judgment should be denied.

In reply, Winnebago contends that Griffiths cannot rely on Albright, Langerud or Bruckhoff to establish her *prima facie* case as these individuals supervised substantially more individuals than Griffiths, and therefore had substantially more responsibility than Griffiths—thus, as they carried a significantly higher level of responsibility and accountability, they are inappropriate male comparators. Alternatively, even if Griffiths can establish her *prima facie* case, Winnebago contends that it can establish the statutory affirmative defense of a seniority system as to Abbas, Bruckhoff, Jensen, Madson and Wicker—as each of those individuals had more total supervisory experience than Griffiths. Winnebago further asserts that it can establish that supervisor salaries are based on a number of factors, including the employees' initial starting salary as a supervisor, the merit increases they receive, and whether any special duties are required for their position. Defendant's Reply Brief ("Deft.'s Reply"), Doc. No. 15, at 3. Winnebago also contends that salaries are also based on a goal of keeping supervisors' salaries above the amount of the highest paid salaried worker in that department. *Id.* at 3-4. Winnebago additionally contends that Griffiths received annual raises at the same percentage as those given to other supervisors, and that when she was reinstated as a Supervisor II on January 18, 1993, a male employee being reinstated on the same day was given the exact same salary. Therefore, Winnebago argues it has established two statutory affirmative defenses, and summary judgment should be granted as to Griffiths's EPA claim.

### 3. *Analysis*

#### a. *Griffiths's prima facie case*

"An Equal Pay Act plaintiff's *prima facie* case—that is, one that will avoid summary judgment—consists of sufficient evidence the employer paid different salaries to men and women for equal work performed under similar conditions." *Tenkku v. Normandy Bank*, 348 F.3d 737, 741 n.2 (8th Cir. 2003).

11

> Whether two jobs are substantially equal requires a practical
> judgment on the basis of all the facts and circumstances of a
> particular case, including factors such as level of experience,
> training, education, ability, effort, and responsibility.
> Application of the Equal Pay Act depends not on job titles or
> classifications but on the actual requirements and performance
> of the job. In all cases, therefore, a court must compare the
> jobs in question in light of the full factual situation and the
> broad remedial purpose of the statute.

*Horn v. University of Minnesota*, 362 F.3d 1042, 1045 (8th Cir. 2004) (citing *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 492 (8th Cir. 2003)); *see Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002) (quoting *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 709 (8th Cir. 2000) ("Whether two jobs are substantially equal 'requires a practical judgment on the basis of all the facts and circumstances of a particular case,' including factors such as level of experience, training, education, ability, effort, and responsibility."); *Lawrence*, 340 F.3d at 492 ("In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute.").

The record indicates nine male employees at Winnebago with the same job title, Labor Grade, and salary range as Griffiths at the time of her retirement: Albright, Langerud, Gray, Abbas, Bruckhoff, Jensen, Wicker, Massman, and Penning. The breakdown of their respective salaries in 2001 is as follows:

- Abbas = $904/week
- Bruckhoff = $901/week
- Jensen = $879/week
- Madson = $868/week
- Wicker = $850/week
- Langerud = $842/week
- Albright = $831/week
- Gray = $826/week

- Griffiths = $812/week
- Penning = $803/week
- Massman = $800/week

Plf.'s App. at 42, 51, 59, 65, 70, 76, 79, 84, 87, 95, 98. Other than Griffiths, all of these individuals are male; only two—Penning and Massman— made less per week than Griffiths. The fact that two of the proffered male comparators made less than Griffiths in 2001 does not subvert Griffiths's attempt to establish her *prima facie* case—for, as this court has previously held—after extensive discussion and analysis of Eighth Circuit precedent—if "'some males made more' for 'equal work,' the plaintiff has made out a *prima facie* case of wage discrimination." *Hennick v. Schwans Sales Enterprises, Inc.*, 168 F. Supp. 2d 938, 950 (N.D. Iowa 2001). Griffiths has met her burden at summary judgment of showing that Winnebago "paid some males more"—but this is only a portion of her *prima facie* case. Griffiths must additionally show that these identified male employees performed substantially equal work and had substantially similar job responsibilities as she did in her capacity as Supervisor II of the Large Cabinet Department. *See* 29 U.S.C. § 206(d)(1); *Younts*, 370 F.3d at 752.

The court must, therefore, embark on a comparison of the jobs in question to determine whether they require "equal skill, effort, and responsibility, and . . . are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see Younts*, 370 F.3d at 752. In making this assessment, the court looks at all the facts of the particular case. *Berg v. Norand Corp.*, 169 F.3d 1140, 1145-46 (8th Cir. 1999). "Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job." *Id.* at 1146 (quoting *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 513 (8th Cir. 1995)). The plaintiff cannot rely

on only "conclusory allegations about the similarity of the jobs" in order to sustain her burden on summary judgment. *Id.* at 753; *see Sowell*, 251 F.3d at 683-84 (granting summary judgment on Title VII wage-discrimination claim where plaintiff "put[] forward nothing more than conclusory allegations"). In this instance, the record establishes that seven male employees carrying the same job title, Labor Grade and Job Code, as Griffiths made more per week than she did in 2001: Abbas, Bruckhoff, Jensen, Wicker, Langerud, Albright and Gray.[2] However, "[a]pplication of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job." *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981) (citation omitted); *see Tenkku*, 348 F.3d at 741 ("'neither job classification nor titles are dispositive for determining whether jobs are equal for purposes of [the Equal Pay Act] . . . .'") (quoting *Hunt*, 282 F.3d at 1029). Griffiths's position description, as a Supervisor II for department 507 (Cabinet Shop Manufacturing), contains the following primary objective of position:

> To supervise and direct the personnel and coordinate the work
> activities within the assigned area(s) to achieve the desired

---

[2]Griffiths also points to Plath as an appropriate male comparator receiving higher wages than herself—$912/week in 2001. Plf.'s App. at 85. However, unlike the other identified male employees, Plath had a different job title, Labor Grade, and Job Code than Griffiths: Plath was a Manufacturing Engineering III, Labor Grade 67, Job Code XC. Plf.'s App. at 85. Plath's written position description indicates that his job duties revolve around engineering tasks such as: " perform[ing] investigations and analysis of new designs, materials, process, equipment, facilities, and provid[ing] methods/standards information"; "coordinat[ing] special projects and assist[ing] his fellow engineers to improve the manufacturing of Winnebago products"; and "coordinat[ing] implementation of new products from design through manufacturing." *Id.* at 85. There is no indication that Plath had any kind of supervisory authority over others. *See id.* As such, the court finds that even in the light most favorable to the plaintiff, the record does not generate a genuine issue of material fact that Plath performed substantially equal work as Griffiths—and, therefore, he is not an appropriate male comparator.

> quality and quantity of production on schedule and at the most
> favorable cost.

Plf.'s App. at 46. The position descriptions for Abbas, Bruckhoff, Jensen, Wicker, Langerud, Albright and Gray contain the exact same primary objective as Griffiths. *Id.* at 49, 56, 62, 68, 73, 82, 88. Griffiths's position description also contains a section entitled "Major Areas of Accountability," which lists sixteen areas of accountability. *Id.* at 46-47. The "Major Areas of Accountability" for Abbas, Bruckhoff, Jensen, Wicker, Langerud, Albright and Gray are either exactly the same, or nearly identical, to those listed as Griffiths's "Major Areas of Accountability." Griffiths's position description contains "Major Area of Accountability" number 6, which reads : " Enforces compliance with all safety rules and regulations and takes prompt, corrective action concerning any potential safety hazard." Plf.'s App. at 46. "Major Area of Accountability" number 6 on Albright's, Langerud's, Jensen's, and Wicker's position descriptions contains that language and the following additional sentence: "Provides training so all processes are performed and machines are run in a safe manner." *Id.* at 49, 56, 82, 88. Griffiths's "Major Area of Accountability" number 10, reads: "Selects new employees and assures they receive adequate orientation and training." *Id.* at 46. "Major Area of Accountability" number 10 contains the following slightly different language on the position descriptions of Albright, Langerud, Abbas, Jensen, Wicker : "*May participate in the selection of new employees* and assures they receive adequate orientation and training." *Id.* at 49, 56, 68, 82, 88 (emphasis added). Bruckhoff's "Major Area of Accountability" number 10 reads: "*Responsible for the selection of new employees* and assures they receive adequate orientation and training." *Id.* at 73 (emphasis added). Other than these minor variations, the sixteen "Major Areas of Accountability" on the position descriptions for Abbas, Bruckhoff, Jensen, Wicker, Langerud, Albright and Gray are exactly the same as

15

Griffiths's.  Further, there is testimony in the record that the position descriptions for these individuals accurately stated the duties of a Supervisor II.  In his deposition, Bruckhoff testified that his position descriptions were "very accurate" in describing his actual duties. *Id* at 10.  Both Langerud and Gray testified that it was an accurate description of their job duties. *Id.* at 14, 17.

Winnebago contends that as Bruckhoff, Albright and Langerud supervised more individuals than Griffiths, they did not perform equal work as their positions required a heightened level of responsibility.  The record contains the following information regarding supervisory responsibility:

- Griffiths supervised between 20-35 persons; and 21 persons at her retirement.
- Gray supervised 18-32 persons.
- Bruckhoff supervised between 30-60 persons.
- Langerud supervised between 54-62 persons.
- Albright supervised 86-92 persons.

Plf.'s App. at 2, 10, 14, 17, 23.  There is *no information* in the record regarding the number of individuals supervised by Abbas, Jensen or Wicker.  In contrast, there is testimony in the record that there is little to no difference in the job responsibilities of Supervisor IIs in various departments at Winnebago.  For example, when asked what the difference was between his position and that of other supervisors, Gray answered: "Probably none.  No difference at all." *Id.* at 17.  Albright indicated that his job differed from that of other Supervisor IIs, but only in the sense that he supervised mainly female employees. *Id.* at 23.  Daryl Krieger ("Krieger"), a production manager having authority over five Supervisor IIs in 2001, including Griffiths, testified:

Q: Were the supervisors' responsibilities between the different

departments pretty similar?

A: As far as what they were responsible to do?

Q: Yes.

A: *I would say yes. I mean, they performed different functions, as far as producing the components. But the supervisors' responsibilities were similar, yes.*

Q: Can you tell me some of the differences that the different supervisors would have between their jobs?

A: Primarily just in the components they manufacture.

*Id.* at 29 (emphasis added). Further, Krieger testified that the number of persons a supervisor supervises was not taken into consideration in determining the supervisor's annual salary increase:

Q: . . . the number of people you have to supervise.
　　 Is that something that would be taken into consideration
in the amount of raise you would get?
A: *No, not in my opinion.*

Plf.'s App. at 30 (emphasis added). In this instance, despite Winnebago's contentions to the contrary, Griffiths has certainly produced more than "conclusory allegations about the similarity of the jobs." *Younts*, 370 F.3d at 753. Evaluated in the light most favorable to Griffiths, the record generates a genuine issue of material fact as to whether Abbas, Bruckhoff, Jensen, Wicker, Langerud, Albright and Gray[3] performed substantially equal

---

[3] Griffiths also identifies Edward Madson, Sr. ("Madson"), as an appropriate male comparator. Unlike Abbas, Bruckhoff, Jensen, Wicker, Langerud, Albright and Gray; Madson has a different job title and Job Code than Griffiths: Madson was a Warehouse Supervisor, Labor Grade 65, Job Code RC. Plf.'s App. at 84. Because Madson has the

(continued...)

work to Griffiths. *See Hunt*, 282 F.3d at 1030 ("Two jobs could require '[i]nsubstantial or minor differences in the degree or amount of skill, or effort, or responsibility' and still be equal. The same is true for insubstantial or minor differences in supervisory responsibility.") (quoting 29 C.F.R. § 1620.14(a)); *Hinnick*, 168 F. Supp. 2d at 946-47 (finding genuine issue of material fact to exist as to whether differences in plaintiff's position and that of two male comparators were insubstantial or minor). Griffiths has sustained her burden of generating a genuine issue of material fact as to the elements of a *prima facie* case of unequal pay based on sex in violation of the EPA.

### b.    *Statutory affirmative defenses*

"Under the Equal Pay Act framework, once a plaintiff establishes that an employer paid employees of the opposite sex differing wages for equal work, the burden of proving that such a discrepancy was based upon a 'factor other than sex' rests squarely upon the employer's shoulders." *Fagen v. Iowa*, 301 F. Supp. 2d 997, 1002-03 (S.D. Iowa 2004) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)). "At the summary judgment stage of the proceedings, the employer's justification for the differences is irrelevant, unless it is strong enough to establish one of the statutory affirmative defenses as a matter of law." *Tenkku*, 348 F.3d at 741 n.2. In this instance, Winnebago claims that it can establish that the difference in pay was due to a

---

[3](…continued)
same Labor Grade as Griffiths (65), his salary range and midpoint are the same as Griffiths's (minimum = $631; midpoint = $789; maximum = $947). However, there is very minimal information in the record regarding his actual job duties as compared to Griffiths's. As noted, Griffiths has come forth with sufficient evidence to demonstrate a genuine issue of material fact as to her *prima facie* case without considering Madson as a male comparator. Therefore, as the record is lacking any substantive detail as to Madson's job duties and responsibilities, the court does not, at this time, take a position as to whether Madson's job duties are substantially equal to Griffiths's.

seniority system and factors other than sex.

*i.*    ***Seniority system.***  The court turns first to Winnebago's claim that a seniority system justifies the difference in wages paid to Griffiths and other male comparators. Griffiths was a supervisor[4] from 1985 to 1990, at which point she was demoted to a senior lead position due to an economic slow-down at Winnebago—Griffiths's salary was frozen during the period she was a senior lead. Plf.'s App. at 2.  Griffiths was reinstated to a Supervisor II in 1993—a position which she retained until her retirement on March 1, 2002. *Id.*  Winnebago contends that the higher salaries paid to Abbas, Bruckhoff, Jensen and Madson were due to the fact that they had significantly more supervisory experience than Griffiths in that they all became Supervisor IIs in 1983 and 1984, prior to Griffiths's promotion to a supervisory level in 1985.  Further, Winnegabo contends that though Wicker became a Supervisor II in 1988, he had more cumulative supervisory experience than Griffiths as he was never demoted during the economic slow-down in 1990.  Though the seniority rationale may ring true when focusing only on Abbas, Bruckhoff, Jensen, Madson and Wicker—*three* of the other male comparators having less supervisory experience than Griffiths made more than she did in 2001: Langerud became a Supervisor II in 1995; Albright became a Supervisor II in 1996 and Gray became a Supervisor II in 1998. *Id.* at 51, 59, 65.  Langerud, Albright and Gray all received higher weekly salaries than Griffiths in 2001.  The fact that three male comparators, having less supervisory experience than Griffiths, were paid more than she was in 2001 severely undercuts Winnebago's assertion

---

[4]It is unclear from the record whether Griffiths was Production Supervisor I or a Supervisor II during this time period.  In her deposition, Griffiths indicates merely that she was a 'supervisor.' Plf.'s App. at 2.  In the first page of her ICRC complaint answers, Griffiths states she was a 'Supervisor I' as of April 8, 1985—however, on the second page of her answers, Griffiths indicates she was a 'Supervisor II' from 1985 to 2000. *Id.* at 37-38.

that the disparity in pay was the result of a seniority system.  Likewise, viewing these facts in the light most favorable to Griffiths, Winnebago has not established as a mater of law that unequal wages were paid as part of a seniority system.

*ii.* ***Factors other than sex***.  With regard to factors other than sex, Winnebago argues that "salary range is determined by a number of factors, including that employee's initial starting salary as a supervisor, the merit increases received by the employee, and whether the supervisor's job includes any special factors resulting in a higher salary, such as the weld shop supervisors." Deft.'s Reply at 3.  Additionally, the starting salary of a supervisor is influenced by "Winnebago's desire to keep supervisor salaries above the amount the highest paid hourly worker would make for working similar hours"and in some circumstances, a supervisor's manager could request a special increase in order to comport with this goal *Id.* at 3-4.  Winnebago argues that on the day of her reinstatement—January 18, 1993—a male employee, Edward Honsey ("Honsey"), was also reinstated as a Supervisor II, and both of them received the same starting salary of $560/week. Defendant's Supplemental Appendix ("Deft.'s Supp. App."), Doc. No.  15, at 43, 45. Further, Winnebago points out that many male individuals promoted to Supervisor II *after* Griffiths were given lesser starting salaries.[5]  *Id.* at 44-45.  Winnebago also contends that Griffiths was given annual raises of the same approximate percentage as those given to the

---

[5]Specifically, Winnebago asserts the following individuals were granted the following salaries following their promotion to Supervisor II:
- David Kessler—Supervisor II starting 8/2/93—$490/week.
- Kevin Massey—Supervisor II starting 10/18/93—$510/week.
- Duane Gossman, Jr.—Supervisor II starting 11/8/93—$515/week.
- John Mokelstad—Supervisor II starting 3/21/94—$485/week.
- Richard Lahr—Supervisor II starting 11/28/94—$450/week.

Deft.'s Supp. App. at 45.

male comparators. Winnebago specifically points out that the reason for Gray's elevated salary was due to a special increase he received in 1999 at the request of his manager in order to provide a greater pay separation between Gray and two new supervisors in his department. *Id.* at 44.

"'Under the EPA, a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. Rather, the defendant *must prove* that the pay differential was based on a factor other than sex.'" *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 483 (8th Cir. 2003) (quoting *Taylor v. White*, 321 F.3d 710, 716 (8th Cir. 2003)) (emphasis added). The record indicates that Honsey was reinstated to Supervisor II status on the same date as Griffiths (January 18, 1993), and that he received the same starting pay as Griffiths ($560/week). Deft.'s Supp. App. at 45. However, curiously absent from the record are two important facts: (1) Honsey's prior supervisory experience in comparison with Griffiths; and (2) Honsey's pay compared to that received by Griffiths in 2001. Further, though the male comparators and Griffiths received approximately the same percent salary increase in 2001—3%—this is *not* the case for the previous year:

| Name | % increase 2000 | % increase 2001 |
|---|---|---|
| Wicker | 2.6119 | 3.0 |
| Jensen | 3.6407 | 2.9 |
| Abbas | 3.9053 | 3.0 |
| Griffiths | 3.95 | 3.0 |
| Albright | *4.0* | 3.1 |
| Gray | *4.1558* | 3.0 |

| | | |
|---|---|---|
| Langerud | *4.7435* | 3.0 |
| Bruckhoff | *4.7904* | 3.0 |

Plf.'s App. at 40, 51, 59, 65, 70, 76, 79, 87. Four of the male comparators making a higher salary that Griffiths in 2001 received a higher percentage increase in their wages in 2000.[6] *See id.* Additionally, though the record shows that several employees promoted to Supervisor II *after* Griffiths received lesser starting salaries than she did, the record does not contain information as to those male comparators' salaries in 2001, supervisory experience, or tenure at Winnebago as compared to Griffiths. Moreover, as discussed above, the record establishes that at least three male comparators having less Supervisor II experience than Griffiths received greater wages than she did in 2001—Albright, Gray, and Langerud. Even applying Winnebago's asserted policy of granting special wage increases to increase pay separation between new and 'veteran' supervisors—potentially justifying Gray's higher salary—there still remains no explanation for Langerud's and Albright's higher salaries. At this stage, the court finds that the record does not establish, as a mater of law, that the pay differential between Griffiths and the male comparators was based on a factor other than sex. *See Tenkku*, 348 F.3d at 741 n.2. Therefore, as Griffiths has met her burden on summary judgment with respect to her *prima facie* case and Winnebago has not established any statutory affirmative defense as a matter of law, summary judgment on Griffiths's EPA claim is denied.

---

[6]As a side note, the two male comparators making less than Griffiths in 2001—Massman and Penning—received 4.5822% and 6.1224% salary increases in 2000, respectively. Plf.'s App. at 95, 98.

### III. CONCLUSION

As Griffiths has withdrawn her Title VII sex discrimination claim, the portion of Winnebago's Motion for Summary Judgment seeking summary judgment on the sex discrimination claim is **denied as moot**. For the reasons set forth above, Winnebago's motion for summary judgment as to Griffiths's EPA claim is **denied**.

**IT IS SO ORDERED.**

**DATED** this 5th day of May, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA